Lee *v.* Cole.

---

## DANIEL H. LEE

### *v.*

## MULFORD COLE et al.

1. If an assignee for the benefit of creditors refuses or unreasonably neglects to take proceedings to set aside conveyances by the assignor in fraud of his creditors, a judgment creditor of the assignor, whose claim has been presented to the assignee and recognized by him, may institute such proceedings in this court for the benefit of himself and other creditors as to whom such conveyances are void, making the assignee a party defendant.

2. Where, in such a case, the proof of refusal or neglect is not entirely satisfactory, but the defendant assignee, in his answer by way of cross-bill, asks that the relief prayed for by the complainant may be afforded him in the complainant's stead, the suit will be retained, and whatever may be realized through its instrumentality will go to the assignee for the benefit of the creditors of the assignor, who have presented their claims to the assignee, and as to whom the conveyances assailed may be fraudulent.

3. Where a debtor in failing circumstances is the owner of a number of mortgages, and, in pursuance of a scheme to defraud his creditors, causes the mortgages to be foreclosed, and procures his sons to attend the foreclosure sales and buy the mortgaged lands, they participating in his fraudulent design, the sons will be deemed to hold such lands in trust for their father's creditors, and the lands will be decreed to be sold for the benefit of those creditors.

4. If the sons have mortgaged the lands, bought in pursuance of such a

fraudulent scheme, to *bona fide* mortgagees, they must account for and pay the amount due upon such mortgages.

5. Where lands were conveyed by a debtor to his sons as security against loss by reason of their endorsements for him for the benefit of his creditors, the sons will be required to account for the rents, issues and profits of such lands during their possession of them, and the lands will be sold, and out of the moneys found to be due upon such accounting and realized from such sale, the amounts due to the sons, by reason of their loss upon their endorsements, will be paid, and the remainder will be applied for the benefit of the creditors.

6. A married woman gave her husband moneys in 1855 and again in 1866, but did not, at either time, take from him any evidence of his indebtedness to her, or ask for payment of either principal or interest of such moneys until her husband became insolvent in 1882. *Held,* that the appropriation by the husband, under the circumstances, would not, as against his creditors, support a mortgage to his wife, but that as to such creditors the mortgage must be declared to be fraudulent.

Creditor's bill.　Heard on bill, answers, cross-bill and proofs.

*Messrs. Jackson & Coddington,* for the complainant.

*Mr. R. V. Lindabury,* for the defendants, except Elias R. Pope.

*Mr. Zerman Norman,* for Elias R. Pope.

THE CHANCELLOR.

The bill is filed by a judgment creditor of the defendant, Mulford Cole, for the purpose of setting aside certain conveyances of Cole's lands as fraudulent and void against creditors. It is exhibited for the benefit of the complainant and all other creditors who are similarly situated and shall come in and contribute to the expenses of the suit.

Before the recovery of the complainant's judgment, and on the 1st day of October, 1883, Mulford Cole made an assignment of all his property to one, Elias R. Pope, for the benefit of his creditors.

Pope, as such assignee, has been made a party defendant in the suit.

The complainant alleges that Pope, when requested to do so, refused and neglected to take proceedings to have the convey-

Lee *v.* Cole.

ances in question declared fraudulent and void. By his answer, Pope denies that allegation, and by that part of his answer which is exhibited by way of cross-bill against the complainant and the defendants, alleges that the complainant has presented to him, as assignee, a claim against the estate of Mulford Cole for the moneys covered by the judgment, and that he, as assignee, joins in the charges of fraud that are made in the bill. He prays that the relief sought by the complainant may be accorded to himself, in behalf of all the creditors of Mulford Cole.

It is objected, by the defendant, Mulford Cole, that the complainant cannot maintain his bill, because he has no lien upon the property in question to enable him to challenge the transfers he attacks. The argument is this : that his judgment is against Mulford Cole, and that before the entry of that judgment, Cole had made a valid transfer of whatever titles he had in the property affected by the complainant's suit, to Elias R. Pope for the benefit of his creditors, and that when the complainant's judgment was entered against Mulford Cole, it did not become a lien upon the lands of Elias R. Pope, assignee.

The complainant, by his action at law, has established his claim against Mulford Cole, and thereby determined his *status* as a creditor. He has also presented his claim as a creditor, to the assignee, Pope, and has been recognized by such assignee as a creditor of Cole. The assignee is trustee for the benefit of the creditors of Mulford Cole, and among them, for the complainant. He cannot surrender or destroy that trust, except by the consent of those creditors. The trust existing, this court will execute it, and, in doing so, if it be necessary, will appoint a new trustee. *Scull* v. *Reeves, 2 Gr. Ch. 84, 131 ; Alpaugh* v. *Roberson, 12 C. E. Gr. 96 ; Pillsbury* v. *Kingon, 6 Stew. Eq. 287, 299.* In *Pillsbury* v. *Kingon,* just cited, it was settled, in this State, that an assignee, under the assignment act for the benefit of creditors *(Rev. p. 36),* may, by suit, set aside conveyances by the assignor in fraud of his creditors, to the extent that such property is needed for the payment of their debts. Through his beneficial interest in the trust, the complainant, a creditor *cestui que trust,* has, substantially, a lien upon the property. The statute *(Rev. p. 38 § 8)*:

Lee *v.* Cole.

directs that the assets which shall come to the hands of the
assignee shall be divided among the creditors.   Each creditor, as
to whom the conveyances attacked are void, has a right to a
share of the proceeds of the recovery had in a suit to set such
conveyances aside.   In *Haston* v. *Castner*, *4 Stew. Eq. 697*, the
court of errors and appeals held that the statutory direction
that the lands of a decedent shall be liable for the payment of
his debts, creates a lien in favor of creditors at large, which gives
them a right to impeach a conveyance made by the decedent in
fraud of creditors, and in *Currie* v. *Knight*, *7 Stew. Eq. 485*,
Vice-Chancellor Van Fleet, following the reasoning in *Haston*
v. *Castner*, held that the direction of the statute, that the assets
of an insolvent estate shall be ratably distributed among the
creditors of the decedent, gives the creditors a lien on such assets,
and entitles them to a standing to contest the validity of a chattel
mortgage not filed according to the statute.   The reasoning of
those cases is analogous to that by which I am guided in this
case.

The bill alleges that the assignee was applied to to bring suit
similar to this, and that he neglected and refused to do so.   The
proofs show that he did not respond favorably, when he was
asked to commence the suit, although at the time of the request
nearly two years had elapsed from the date of the assignment
to him, and he must then have been familiar with all matters
pertaining to the estate assigned to him.   He testifies that he has
no remembrance that such request was made.   Possibly he is
correct in this statement.   The request was made at the post-
office in the city of Plainfield, by a solicitor of the complainant,
and may not have impressed him as important.   It is evident,
from the testimony, that he was regarded as a friend of Mulford
Cole and the other defendants in this suit, and, for that reason,
was probably not importuned, or expected to comply with the
request.   Appearances, in a measure, justified this estimate of his
position.   He testifies himself that the first information he
remembers in reference to the complainant's suit was conveyed
to him by a son of Mulford Cole, one of his co-defendants, and
for two years after the assignment to him he does not appear to

21

have made the least inquiry into the suspicious conveyances here-inafter referred to. His refusal to institute suit, or his neglect to do so, under the circumstances, I think, clearly gives the complainant a standing to sue, and make the assignee a party defendant. *Haston* v. *Castner*, *4 Stew. Eq. 697, 701 ; 2 Perry on Trusts § 886; Chester* v. *Halliard, 9 Stew. Eq. 313 ; Conway* v. *Halsey, 15 Vr. 462 ; Ackerman* v. *Halsey, 10 Stew. Eq. 356.* This situation, together with the fact that the assignee, as defendant, comes in by cross-bill and substantially asks that he may be afforded the relief prayed for by the complainant, leads me to the conclusion that I should retain the suit and decide the case upon its merits. The assignee will be entitled to take whatever may be realized through the instrumentality of the suit, for the benefit of the creditors of the assignor, as to whom the conveyances may be fraudulent, who have presented their claims to him. *Grant* v. *Crowell, 15 Stew. Eq. 524, 527.* He is before the court, willing to take those moneys, and to perform his duty with reference to them. There can be no impropriety in allowing the complainant to prosecute the suit to its conclusion.

The defendant, Mulford Cole, resides in Plainfield, in this state. Prior to 1875, he dealt extensively in real estate and in mortgages upon real estate, and rapidly amassed a considerable fortune. Because of liberal discounts and bonuses allowed to him upon second and third mortgages, many of his investments and ventures were in such securities. When the prices of land depreciated, in 1875, his losses were very large, and he speedily became financially distressed. Between June, 1875, and September, 1877, he became indebted to the complainant and the complainant's brother in an amount aggregating more than $15,000. Ultimately that entire indebtedness became the property of the complainant, and, with interest, constituted the $21,028.21 damages, for which he recovered judgment in November, 1883. It now constitutes more than two-thirds of Mr. Cole's entire indebtedness. Without it, the $14,000 assets, in the hands of the assignee, would more than pay all creditors, in full.

In 1877, Mulford Cole commenced to foreclose two mortgages

Lee v. Cole.

upon about an acre and a quarter of land, in Plainfield, fronting on Mountain avenue, upon which was built a small house, and, in 1878, obtained a decree in his favor for nearly $4,000. The mortgaged property was worth from $1,200 to $2,000. He attended the sheriff's sale, with his lawyer and his son Elias, and had the property sold by the sheriff to Elias for $500. It satisfactorily appears that Elias then knew of his father's indebtedness and distressed circumstances, and also knew that the property was worth much more than double the amount he bid for it, and also that the decree in favor of his father was very much more than the price he was paying for the property, or that his father could afford to let it be sold for. When I consider these circumstances, and also the similar and other conveyances to Elias hereafter mentioned, and the fact that the father could have bid to the full value of the property and have taken credit for his bid upon his decree, which does not appear to have had any value beyond its lien upon the mortgaged premises, I am satisfied (under the principles declared in *Tantum* v. *Green*, 6 *C. E. Gr. 364*) that the conveyance must be held to be fraudulent as against the creditors of Mulford Cole. That the sale was effected through the medium of a sheriff's sale will not afford protection in a court of equity. *Metropolitan Bank* v. *Durant*, 7 *C. E. Gr. 35, 41; S. C., on appeal*, 9 *C. E. Gr. 556.* Just prior to the entry of the complainant's judgment, Elias Cole mortgaged this land, to Joseph Brick, to secure the payment of $600. No fraud can be imputed to that transaction on the part of Brick. Upon principles announced in *Post* v. *Stiger*, 2 *Stew. Eq. 554*, Elias Cole must be held accountable for the amount due upon that mortgage.

A similar transaction to this is the purchase of property at Dunellen, which was sold under a decree in favor of Mulford Cole for $2,200, upon the foreclosure of a mortgage. There the property was worth about $2,000 and was bought by Elias for $500. This purchase was about a month after the purchase of the Mountain avenue property. In November, 1883, just prior to the entry of the complainant's judgment, it was mortgaged to one McGuire for $900. No fraud can be imputed to McGuire.

I think that this transaction must be regarded and treated, in all respects, as that of the Mountain avenue property.

Property on the corner of Exchange alley and Second street, in Plainfield, was sold, after the fashion of the two sales above mentioned, under a decree of foreclosure, in favor of Mulford Cole, for over $7,000, in May, 1879, to Elias Cole, for $2,100. The property was worth about $3,200. This property was also mortgaged by Elias to McGuire, a short time before the entry of the complainant's judgment for $2,000. I am constrained to regard this purchase as fraudulent, and to deal with it as I have determined to deal with the transactions above mentioned.

On November 18th, 1882, under a foreclosure decree in favor of Mulford Cole for over $3,200, one and seventy-two one-hundredths of an acre of land, at Plainfield, were sold by the sheriff to Elias Cole, under circumstances in all respects similar to the transactions above mentioned. The last mentioned mortgage, to McGuire, covers also this land. This transaction must also be dealt with as those I have already mentioned. In this case, if the testimony of Elias and Mulford Cole is believed, Elias gave $1,500, the full value, for this land. But if he did so, I am satisfied that it was in pursuance of a fraudulent intent to shield it from his father's creditors. His purchase, to be valid, must not only be for good consideration, but must also be without fraudulent intent to hinder and delay creditors. All these parcels of land must be decreed to be sold.

The complainant next attacks six conveyances of real estate by Mulford Cole, in which Mulford's wife did not join. Five of them were to his son Elias, and one of them was to another son, George.

The first was a conveyance of two undivided thirds of a tract of about twelve acres of mountain lands near Plainfield, on March 20th, 1880. The consideration paid was $100. The land conveyed was worth upwards of $200. It is explained that only $100 was paid, because one undivided third had been conveyed to Mulford Cole by an infant. After the sale to Elias, the title was made good to him by a confirmatory deed from the former owner, who had become of age.

The second conveyance was of about seventy acres of land in Warren township, in Somerset county, dated on December 13th, 1881. The defendants claim that this conveyance was made as security to Elias for his endorsement of notes for his father. The property was subject to a mortgage of $1,700. In January, 1883, Elias sold the property to one Christopher Kotchline, for $4,500, out of which he paid the $1,700 mortgage. He claims that he expended the remainder of the purchase-money in the payment of notes of Mulford, on which he was liable as endorser.

The third deed was for a house and lot on Steiner Place, in North Plainfield, as security for an endorsement of Elias upon a note for $600, that his father had given to one Leland. That deed was dated on June 16th, 1882. It is claimed that Elias has since paid that note.

The fourth deed bears date on the 12th day of October, 1882, and conveys to Elias about six and a half acres of land, at Plainfield. It is claimed that this land was transferred to Elias as security for his endorsements upon Mulford's note of $1,000, to one Morris. This property was sold, in 1883, by Elias to one McArthur, for $1,100. It is also claimed that with the proceeds of sale he paid the Morris note.

The fifth deed bears date on the 7th of October, 1882, and conveys to Mulford's son George nearly eight acres of land at Plainfield. It is claimed that Mulford was indebted to this son, who was twenty-two or twenty-three years old and resident with his father, in the sum of $450, and that the deed was made to secure the payment of that sum to George. The consideration mentioned in the deed is $1,500. In July, 1883, George sold this land to McArthur for $1,100.

The sixth of these conveyances was made on the 1st of March, 1882, and transfers to Elias Cole a house and lot on Duer street, in North Plainfield, as security for notes bearing the endorsement of Elias, that were given to one Rossiter. This property was subject to a mortgage of $1,000. In July, 1883, Elias sold the property to Isaac Brokaw, for $2,500.

Mulfold, Elias and George, in their answer, say:

"Soon after the panic of 1874, said Mulford Cole began to lose money by depreciation of values in real estate and, during the years 1879, 1880 and 1881, said losses became very heavy, and said Elias Cole, knowing of the same, grew reluctant, and on many occasions refused altogether, to further endorse for Mulford Cole,"

and that, in consequence of his demands for security, the deeds in question were made to him.

I think that the first of these deeds was made for an inadequate consideration, and for the purpose of putting the property out of the reach of Mulford's creditors. It is clear that Elias knew of his father's condition, and certainly, from the many conveyances by the father through sheriff's sales, in which he was concerned, he knew that his father was making every effort to put his property where his creditors could not get it. This very deed conveyed the property subject to the wife's right of dower. I think it is void against creditors.

The other five conveyances, four to Elias and one to George, were professedly by way of security only. The Steiner Place property has not been sold. Elias must account for its rents, issues and profits. An account will also be taken of the amount for which the property is liable as security to him. From the rents, issues and profits added to the proceeds of the sale of the property, will be paid to Elias the amount which shall be found to be due to him on account of this security, and the balance will be paid to the assignee, Pope, for the benefit of his *cestuis que trustent* who may be entitled to the same.

The other four parcels of land have been sold, I think, with reasonable fairness. Elias and George will respectively be required to account for the rents, issues and profits of such of these lands as were in their hands, while they were in their possession, and for the proceeds of the sales of them, and will be allowed the amounts they shall respectively show themselves to be entitled to from each parcel of land, by reason of their endorsements for their father, and the balance, in the case of each parcel, shall be paid to the assignee, Pope. If it shall appear, upon the accounting, that any of these deeds were not taken, as alleged, in good faith for security, but were taken in secret trust

to sell and hold the proceeds of sale for the use of Mulford Cole, with the intention of preventing his creditors from resorting to them, the grantee in the deed must account for the entire proceeds of sale of those parcels of land. *Bump on Fraudulent Conveyances 42.*

The complainant also attacks a mortgage for $3,000, made by Mulford Cole to his son Elias, on June 27th, 1882, upon six acres of land at Plainfield. It is not pretended that Elias gave any consideration for this mortgage. It was made to him to be immediately transferred to his mother, the wife of Mulford Cole. Mulford in his testimony says that it was given for moneys that he had from his wife at the different times she was paid portions of her father's estate. He says that, as the estate was divided, his wife was paid her share, in cash, and that he got from her $1,500 in 1855, and another $1,500 in 1865 or 1866. He says that he put off giving her a mortgage, believing that he would pay her in cash, and that he finally gave her the mortgage, when she " wanted the money or security for the amount." He also says that Elias did not give any consideration for the mortgage, but that the day it was delivered to him, he assigned it to his mother, Emeline D. Cole.

The answer of the defendants, without oath, alleges that the $3,000 mortgage was given in repayment of two loans, by the wife to the husband, one for $1,500 in 1855, and the other for the same amount in 1866. It alleges, also, that there was a distinct promise to repay the sums thus borrowed. That allegation, however, is not proved. Mulford Cole does not say so, and Mrs. Cole was not sworn as a witness. It does not appear that any evidences of indebtedness were given by the husband to the wife when the moneys were loaned, nor that any interest was ever paid upon the debt, nor that any moneys were ever paid on account of the principal of the debt, nor that any payment of either principal or interest was asked for until the mortgage in question was made, in 1882. In the case of the first loan twenty-seven years had then elapsed, and in the case of the second loan, sixteen years had elapsed. It does not appear that, in all that time, the wife ever spoke to her husband upon the subject of the

repayment of her loans, until the time of making this mortgage, when he was embarrassed, and his creditors were upon him. And, as to her demanding payment and security in 1882, we have the solitary testimony of the man who is striving to maintain the *bona fides* of this mortgage, uncorroborated by his wife, or by a particle of other evidence of any kind.

In *Post* v. *Stiger*, *2 Stew. Eq. 554, 556*, Vice-Chancellor Van Fleet says : "A claim by a wife against a husband, first put in writing when his liabilities begin to jeopardize his future, should always be regarded with watchful suspicion, and, when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected at once, unless their statements be so full and convincing as to make the fairness and justness of the claim manifest. Any other course will encourage fraud, and greatly multiply the hazards of business."

In *Luers* v. *Brunjes*, *7 Stew. Eq. 19 ; S. C., 7 Stew. Eq. 561*, it was held that moneys given by a married woman to her husband, in 1855, and for which she received no evidence or security until 1877, when he had become insolvent, would not sustain a transfer of property to her as against his creditors.

The appropriation, by a husband, of his wife's separate estate, with her knowledge and consent, will not constitute a good consideration, to support a conveyance to her by the husband, as against his creditors, unless a definite agreement for its repayment is satisfactorily shown. *Clark* v. *Rosenkrans, 4 Stew. Eq. 665 ; Luers* v. *Brunjes*, and *Post* v. *Stiger, supra ; Bump on Fraudulent Conveyances 311.*

I think that the proofs, in support of the mortgage in question, signally fail to prove that this was a loan by Mrs. Cole to her husband. If he did have her money, I think she did not expect him to repay it. I do not believe that he would ever have thought of repaying it, if he had not become insolvent and cast about him for an excuse to support a conveyance as against his creditors. The mortgage must be declared to be fraudulent as to creditors.

I fail to find that any of the other conveyances attacked should

be set aside. While the fraudulent intent with which Mulford Cole made them is apparent, I am unable to say that the conveyances were accepted by the purchasers of the lands with the same intent. It appears that they gave valuable consideration for each conveyance. And I am not satisfied that Elias Cole holds the farm, that was conveyed to him in 1865, in trust for his father.